**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**BDR PHARMACEUTICALS, INTERNATIONAL PVT. LTD.,**
Units 1601–1602, 16th Floor, B Wing
Peninsula Business Park
Lower Parel (West)
Mumbai 400013
India,

Plaintiff,

v.

**UNITED STATES FOOD AND DRUG ADMINISTRATION**
10903 New Hampshire Avenue
Silver Spring, MD 20993,

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**
200 Independence Avenue SW
Washington, DC 20201,

**ROBERT F. KENNEDY, JR.**
Secretary of Health and Human Services
200 Independence Avenue SW
Washington, DC 20201, and

**KYLE DIAMANTAS**
Acting Commissioner of Food and Drugs
United States Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993,

Defendants.

C.A. No.

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT

Plaintiff BDR Pharmaceuticals, Ltd. ("BDR") brings this civil action for declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, to

challenge the Food and Drug Administration's ("FDA") written rejection of BDR's Abbreviated New Drug Application ("ANDA") No. 221413 for vonoprazan fumarate tablets.

BDR's vonoprazan fumarate product is not an antibiotic or an antifungal drug product and BDR is not seeking ANDA approval for any antibiotic or antifungal indication. Yet the FDA arbitrarily and capriciously applied the 10-year exclusivity provisions of a statute called the Generating Antibiotic Incentives Now Act, 21 U.S.C. §355f (the "GAIN Act") – which is explicitly designed to promote development of antibiotic and antifungal drug products – to refuse to accept BDR's ANDA for review until the expiration of GAIN exclusivity on May 3, 2032 (known as the NCE*GAIN date).

FDA did so under a tortured reading of a non-statutory, internal policy called the "umbrella policy" that FDA says prohibits the acceptance of BDR's ANDA due to a previous grant of GAIN exclusivity to Phathom Pharmaceuticals Inc.'s New Drug Application ("NDA") for Voquezna® (vonoprazan fumarate) Tablets (NDA 215151). Phathom's Voquezna® Tablets include indications for combined use with certain antibiotics, but BDR is not seeking approval for those indications. Instead, BDR's proposed labeling lawfully carves out the antibiotic indications and seeks approval only for acid-related, non-antibiotic, non-fungal uses.

FDA's product-wide application of the GAIN exclusivity based on a non-statutory "umbrella policy" is contrary to the text, structure, and purpose of the GAIN Act and the Federal Food, Drug and Cosmetic Act ("FD&C Act"), including 21 U.S.C. §§ 355(j)(2)(A)(viii), 355(j)(5)(F)(ii), and 355f, and FDA's application of the "umbrella policy" is arbitrary, capricious, and in excess of statutory authority.

## NATURE OF THE ACTION

1. This action challenges FDA's rejection of BDR's ANDA No. 221413 for vonoprazan fumarate tablets, a product containing a single potassium-competitive acid blocker

("P-CAB") approved for acid-related indications. BDR submitted the ANDA electronically on May 3, 2026—the NCE-1 date—with a Paragraph IV certification to a patent listed for NDA 215151 in FDA's official public register of approved drug products, *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book"), along with proposed labeling that omits all antibiotic indications, including most specifically the *H. pylori* eradication indications requiring combination with antibiotics. BDR's ANDA retained only the non-antibiotic acid-related indications.

2. Vonoprazan was first approved as an active moiety on May 3, 2022, when FDA approved two co-packaged combination products for treating *H. pylori* infection. The first co-packaged product, Voquezna® Triple Pak (NDA No. 215152), contains vonoprazan fumarate tablets, amoxicillin capsules, and clarithromycin tablets. The second, Voquezna® Dual Pak (NDA No. 215153), contains vonoprazan tablets and amoxicillin capsules. Both clarithromycin and amoxicillin were well-known antibiotics for *H. Pylori* treatment in 2022 when vonoprazan was approved. Both the Dual and Triple Paks co-packaged combinations identified vonoprazan as a potassium-competitive acid blocker (P-CAB), that did not possess any antimicrobial activity.

3. Because the vonoprazan chemical entity had not been approved before, FDA recognized five years of new chemical entity ("NCE") exclusivity for the Voquezna Paks, expiring May 3, 2027. Moreover, under the GAIN Act, FDA designated the Paks as Qualified Infectious Drug Products ("QIDPs") because they met the statutory criteria of products containing an antibacterial or antifungal drug that are intended to diagnose, prevent, or treat a serious or life-threatening infection,[1] 21 U.S.C. §355f(g). As such, the FDA applied the GAIN provisions of 21

[1] The statute defines a "qualified infectious disease product" ("QIDP") as "a drug (including a biological product), including an antibacterial or antifungal drug, for human use that—(1) acts on bacteria or fungi or on substances produced by such bacteria or fungi; and (2) is intended to treat

U.S.C. § 355f(a) for antibacterial products and extended the exclusivity by five years, to May 3, 2032.

4. FDA later approved Voquezna® (NDA No. 215151), a single-ingredient vonoprazan tablet, on November 1, 2023. In addition to the indications for *H. Pylori* treatment in combination with separately packaged amoxicillin and or clarithromycin products, Voquezna® single-ingredient tablet was approved for erosive esophagitis and heartburn associated with non-erosive gastroesophageal reflux disease ("esophagitis indications").

5. Voquezna®, the vonoprazan single tablet product, could not qualify for QIDP, was never designated a QIDP, and Phathom Pharmaceuticals, Inc. ("Phathom") never requested such designation. The Orange Book accordingly originally listed only five-year NCE exclusivity, expiring May 3, 2027, for approved NDA 215151.

6. On December 11, 2024, Phathom filed a Citizen Petition (Docket No. FDA-2024-P-5703) asking FDA to "correct" the Orange Book listing for Voquezna® to reflect a 10-year NCE exclusivity period expiring May 3, 2032. The petition argued that FDA's "umbrella" policy, which extends NCE exclusivity to all products containing the same active moiety, required the GAIN extension for the QIDP-designated combination Paks to carry over to solitary Voquezna® vonoprazan tablets, even though Voquezna® was never itself designated a QIDP and was never requested by Phathom to be designated a QIDP. Nor could Voquezna® have been eligible for a QIDP designation on its own, given the drug vonoprazan is neither an antibacterial nor an antifungal drug product.

a serious or life-threatening infection, including such an infection caused by—(A) an antibacterial or antifungal resistant pathogen, including novel or emerging infectious pathogens; or (B) qualifying pathogens listed by the Secretary under subsection (f)." 21 U.S.C. § 355f(g).

7. On June 6, 2025, FDA granted the Citizen Petition and treated the GAIN extension as applying across all of the indications of the Voquezna® single ingredient product (NDA 215151), including its non-antibiotic, acid-related esophagitis indications. Because of this conclusion, the FDA rejected BDR's ANDA as premature for its Paragraph IV submission. However, FDA's approach disregards that the QIDP designation was predicated on the combination's antibacterial use—not on vonoprazan's standalone acid-suppressive function. FDA also unlawfully disregards BDR's section (viii) carve-out or the antibiotic indications under 21 U.S.C. § 355(j)(2)(A)(viii) and 21 C.F.R. § 314.94(a)(8)(iv).

8. BDR seeks a declaration that FDA's product-wide application of GAIN exclusivity over vonoprazan for the esophagitis indications is unlawful as applied to BDR's carved-out ANDA; that BDR's ANDA was properly submitted on May 3, 2026 under 21 U.S.C. § 355(j); that FDA's refusal to receive must be vacated under 5 U.S.C. § 706(2); and that FDA must receive and acknowledge BDR's ANDA as of the date it was submitted, with any attendant 30-month stay measured, and backdated, from the hypothetical dates that would have applied had FDA received the ANDA on the NCE-1 date.

9. Because this case presents a pure legal question of federal statutory interpretation and challenges a dated, application-specific agency decision with immediate regulatory consequences, venue in this Court is proper and expedited judicial resolution is necessary to prevent irreparable loss of Paragraph IV timing, first-filer leverage, and the ability for the ANDA applicant to pursue the pathway set forth by Congress in the Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman Act").

## THE PARTIES

10. Plaintiff BDR Pharmaceuticals, Ltd. is a pharmaceutical company that timely submitted ANDA No. 221413 for vonoprazan fumarate tablets referencing Voquezna® Tablets

(NDA 215151). BDR seeks approval of vonoprazan fumarate tablets only for acid-related esophagitis indications. It excludes all *H. pylori* and other infectious-disease indications requiring administration of an antibiotic from its proposed labeling.

11. Defendant United States Food and Drug Administration is an agency of the United States within the Department of Health and Human Services that is responsible for the regulation of drug applications and exclusivities under the Federal Food, Drug, and Cosmetic Act.

12. Defendant United States Department of Health and Human Services is a federal department that oversees FDA.

13. Defendant Robert F. Kennedy, Jr. is the Secretary of Health and Human Services and is sued in his official capacity.

14. Defendant Kyle A. Diamantas, J.D., is the Acting Commissioner of Food and Drugs and is sued in his official capacity.

**JURISDICTION AND VENUE**

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the FD&C Act, 21 U.S.C. §301 *et seq*., the APA, and FDA's implementing regulations. The APA authorizes review of "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and directs the Court to decide relevant questions of law and set aside agency action that is arbitrary, capricious, contrary to law, or in excess of statutory authority, 5 U.S.C. § 706(2)(A), (C).

16. The requested relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and by the Court's authority to grant mandatory and equitable relief necessary to preserve BDR's statutory rights pending review.

17. Judicial review is proper, and sovereign immunity is waived, under 5 U.S.C. § 702 because BDR seeks non-monetary relief against federal agencies and officers acting in their official capacities.

18. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because Defendants are agencies of the United States and federal officers sued in their official capacities, and a substantial part of the events and omissions giving rise to this action—including FDA's decision-making and issuance of the May 4, 2026 rejection—occurred in this District.

## THE FACTUAL BASIS FOR THE CLAIMS

### A. The GAIN Exclusivity

19. The GAIN Act, codified at Section 505E of the FD&C Act, 21 U.S.C. § 355f, establishes QIDP designation for qualifying antibacterial and antifungal drugs intended to treat serious or life-threatening infections and provides an additional five-year extension of specified exclusivity periods for a drug product that is designated and approved as a QIDP. Section 355f(d)(1) further provides that a QIDP designation applies only with respect to the approved application, reinforcing the use- and application-specific character of the incentive.

20. Congress enacted the GAIN Act to address "the public-health threat of antibacterial drug resistance by stimulating the development and approval of *new antibacterial and antifungal drugs*." *See* GENERATING ANTIBIOTIC INCENTIVES NOW, issued by HHS, available at https://www.fda.gov/files/about%20fda/published/Report-to-Congress-on-Generating-Antibiotic-Incentives-Now-%28GAIN%29.pdf at 3, last accessed April 29, 2026 (emphasis added). Ex. 1. The statute does not identify ordinary acid-suppressive treatment of gastroesophageal conditions as a QIDP use or as a use Congress intended to shield from generic competition.

21. GAIN extends the four- and five-year NCE periods described in 21 U.S.C. § 355(j)(5)(F)(ii) by five years for an approved QIDP. 21 U.S.C. §355f(a). NCE exclusivity

ordinarily bars submission of an ANDA for the same active moiety for five years, subject to an exception that if the ANDA contains a Paragraph IV certification, the ANDA can be submitted after four years ("NCE-1 date"). The agency's product-wide application of a GAIN extension to NDA 215151 is therefore a submission bar, not merely an approval delay.

**B. The VOQUEZNA® Tablets NDA and FDA's Approval and Exclusivity Listings**

22. Vonoprazan is a potassium-competitive acid blocker ("P-CAB") that suppresses gastric acid and is not an antibiotic or antifungal agent. Vonoprazan does not act as an antibiotic either when administered alone or in dual combination with amoxicillin or clarithromycin, or triple combination with both amoxicillin and clarithromycin. Therefore, Phathom did not initially request QIDP designation for Voquezna® (vonoprazan) tablets.

23. FDA has approved three products containing vonoprazan: the single-ingredient Voquezna® Tablets product and the Dual Pak and Triple Pak combination products that pair vonoprazan with antibiotics for *H. pylori* eradication.

**Search Results for Proprietary Name, Active Ingredient or Application Number: *vonoprazan***

RX OTC DISCN CSV Excel Print

Display 50 records per page

Showing 1 to 4 of 4 entries Search for text in the table

| Mkt. Status | Active Ingredient | Proprietary Name | Appl. No. | Dosage Form | Route | Strength | TE Code | RLD | RS | Applicant Holder |
|---|---|---|---|---|---|---|---|---|---|---|
| RX | AMOXICILLIN; CLARITHROMYCIN; VONOPRAZAN FUMARATE | VOQUEZNA TRIPLE PAK | N215152 | CAPSULE, TABLET, TABLET | ORAL | 500MG; 500MG; EQ 20MG BASE | | RLD | RS | PHATHOM PHARMACEUTICALS INC |
| RX | AMOXICILLIN; VONOPRAZAN FUMARATE | VOQUEZNA DUAL PAK | N215153 | CAPSULE, TABLET | ORAL | 500MG; EQ 20MG BASE | | RLD | RS | PHATHOM PHARMACEUTICALS INC |
| RX | VONOPRAZAN FUMARATE | VOQUEZNA | N215151 | TABLET | ORAL | EQ 10MG BASE | | RLD | | PHATHOM PHARMACEUTICALS INC |
| RX | VONOPRAZAN FUMARATE | VOQUEZNA | N215151 | TABLET | ORAL | EQ 20MG BASE | | RLD | RS | PHATHOM PHARMACEUTICALS INC |
| Mkt. Status | Active Ingredient | Proprietary Name | Appl. No. | Dosage Form | Route | Strength | TE Code | RLD | RS | Applicant Holder |

Showing 1 to 4 of 4 entries Previous 1 Next

FDA Orange Book at https://www.accessdata.fda.gov/scripts/cder/ob/search_product.cfm (accessed October 3, 2026). Ex. 4.

24. On May 3, 2022, FDA approved Phathom's vonoprazan-and-antibiotic combination products for *H. pylori* eradication. FDA later approved the single-ingredient Voquezna® Tablets product under NDA 215151 on November 1, 2023. The combination

products—not the standalone acid-related product—were the products associated with the QIDP development rationale.

25. Phathom requested, and received, GAIN exclusivity for the Dual Pak and Triple Pak combinations of vonoprazan and the antibiotics clarithromycin and/or amoxicillin. Phathom further requested that its single-ingredient Voquezna® vonoprazan product be granted GAIN exclusivity. After evaluating Phathom's request under a Citizen Petition, FDA granted the request under its non-statutory umbrella policy, by which FDA claimed discretion to extend exclusivity to combination products that contain an active ingredient that has the benefit of an exclusivity. The factual and legal arguments raised and evaluated by FDA in the Citizen Petition are the same as those presented to this Court.

26. FDA's Orange Book lists five-year NCE exclusivity for NDA 215151 running from the original approval of the vonoprazan active moiety on May 3, 2022, through May 3, 2027, together with an additional five-year GAIN extension listed through May 3, 2032, following FDA's June 2025 response to Phathom's Citizen Petition applying its umbrella policy. *See* 21 U.S.C. §§ 355(j)(5)(F)(ii), 355f(a).

27. The Orange Book also lists New Product exclusivity expiring November 1, 2026 and a use exclusivity for the 10 mg strength for the esophagitis indications expiring July 17, 2027. Those indication- or product-specific periods do not independently create the product-wide submission bar FDA invoked here.

28. By treating GAIN-extended NCE exclusivity as a categorical bar against every ANDA referencing NDA 215151, FDA has taken the position that no ANDA for vonoprazan may be submitted before May 3, 2031 with a Paragraph IV certification and that no such ANDA may be approved before May 3, 2032, regardless of the indications sought. That position converts a

use-specific QIDP incentive into a windfall for a non-antibiotic acid-related product and prevents lower-cost treatment for uses outside the QIDP indications.

29. Absent the improperly granted GAIN exclusivity to NDA No. 215151, an ANDA seeking approval for only vonoprazan would be able to have been filed on the NCE-1 date of May 3, 2026, and a lower-cost vonoprazan product could otherwise be available to the public much earlier.

**C. BDR's ANDA filing on the NCE-1 Date with a Carved-Out Label**

30. As contemplated by the Hatch-Waxman framework, BDR submitted ANDA No. 221413 electronically on May 3, 2026, the NCE-1 date and included a Paragraph IV certification to an Orange Book-listed patent associated with NDA 215151.

31. BDR's ANDA included the patent certifications and other information required for receipt and review under 21 U.S.C. § 355(j) and 21 C.F.R. §§ 314.94 and 314.101.

32. BDR's proposed labeling carved out all *H. pylori* eradication indications and other infectious-disease uses that require vonoprazan in combination with antibiotics, while retaining only acid-related indications such as relief of heartburn associated with gastroesophageal reflux disease ("GERD") and healing and maintenance of healing of erosive esophagitis.

33. This "skinny label" approach is expressly authorized by 21 U.S.C. § 355(j)(2)(A)(viii) and 21 C.F.R. § 314.94(a)(8)(iv), which permit an ANDA applicant to omit an indication or other aspect of labeling protected by patent or exclusivity. FDA's approval regulation likewise recognizes that labeling may differ where protected aspects are omitted and the product remains safe and effective for the remaining, non-protected conditions of use.

34. FDA generally considers the QIDP designation as applying to a specific drug product. The GAIN Act expressly mandates that exclusivity extension is not applicable if a product

does not meet the definition of a qualified infectious disease product based upon its approved uses 21 U.S.C. § 355f(c)(3).

35. On May 3, 2026, the same day it submitted ANDA No. 221413, BDR submitted to FDA a letter explaining why the GAIN extension could not lawfully bar its ANDA. BDR explained that FDA's June 6, 2025 grant of NCE*GAIN exclusivity to NDA 215151 was improper because Voquezna® Tablets were never designated a QIDP, vonoprazan is a potassium-competitive acid blocker with no antibacterial or antifungal activity, and 21 U.S.C. § 355f(c)(3) expressly withholds the GAIN extension from "a product that does not meet the definition of a qualified infectious disease product . . . based upon its approved uses." BDR further explained that NDA 215151 is the type of "subsequent application" for a new indication and strength to which 21 U.S.C. § 355f(c)(2) denies the GAIN extension, and that FDA's non-statutory umbrella policy cannot confer an exclusivity that Congress withheld and that vonoprazan alone could never have earned.

36. BDR's letter also explained that, even if the GAIN extension could attach to NDA 215151 in some respect, it could not bar BDR's carved-out ANDA, because the additional five years exist solely by virtue of QIDP designations granted for infectious-disease uses that BDR's proposed labeling omits under 21 U.S.C. § 355(j)(2)(A)(viii) and 21 C.F.R. § 314.94(a)(8)(iv). BDR therefore requested that FDA receive the ANDA or, at a minimum, conditionally accept it pending resolution of the GAIN question. FDA held the letter for more than four months while repeatedly stating that it was "actively reviewing" the correspondence.

### D. FDA's Refusal to Receive BDR's ANDA on GAIN Exclusivity Grounds

37. Almost five months after BDR's timely filing, FDA issued a Refusal Notice for BDR's ANDA No. 221413. Ex. 2. FDA stated that the ANDA is "invalid and hereby rejected." Specifically, FDA stated the ANDA was premature because NDA 215151 "is protected by 5 years of NCE exclusivity with an additional 5 years for the Generating Antibiotic Incentives Now

(GAIN) exclusivity, the expiry of which is May 3, 2032." FDA found that "the earliest an ANDA citing 215151 as its basis of submission may be submitted is May 3, 2032" regardless of any carve-out of conditions relating to antibiotics. FDA also rejected BDR's request for conditional acceptance. *Id.*; Ex. 3.

38. FDA's action applied a product-wide NCE/GAIN submission bar even though BDR's proposed label omits every QIDP-related indication and seeks approval only for non-QIDP, acid-related conditions of use. FDA's action therefore disregards the Section 355(j)(2)(A)(viii) mechanism and the statutory distinction between an indication-specific incentive and the product-wide submission rule FDA invoked.

39. FDA's June 2025 response to Phathom's Citizen Petition is the agency's public, application-wide resolution of the same NCE/GAIN umbrella-policy issue. By extending GAIN treatment to NDA 215151 without an indication-specific limitation and then using that extension to refuse BDR's carved-out ANDA, FDA adopted a rule that exceeds the text and purpose of Section 355f and fails to explain why Congress's use-specific QIDP language does not preserve access for non-QIDP indications.

40. The agency's grant of GAIN exclusivity to the single-active Voquezna® Tablet product based on the previous approval of the Dual Pak and Triple Pak products based on FDA's umbrella policy is also contrary to Section 355f and is markedly different from FDA's previous invocation of its "umbrella policy" for granting exclusivity. As previously mentioned, vonoprazan is not even an antibiotic, much less a new antibiotic product, and FDA's umbrella policy is meant to encourage the further development of combination products containing new antibiotic drugs, which is not the situation here where the combination of a new acid reducing drug is combined with an old antibiotic. While GAIN exclusivity may or may not be applicable to the Dual or Triple

Pak products, it was not meant for and is inapplicable to the non-antibiotic, single-ingredient Voquezna® product.

**E. Ripeness, Futility, and Post-*Loper* Standard of Review**

41. FDA's rejection notice stating that BDR's ANDA "submission is invalid and hereby rejected" constitutes a "final agency action," because it consummates FDA's decision-making process on BDR's identified application, definitively determines that the ANDA may not be received, and produces direct legal consequences by preventing receipt, issuance of the Paragraph IV acknowledgment letter, service of valid Paragraph IV notice, commencement of the 45-day patent-suit period, and the Hatch-Waxman litigation process. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The decision is not tentative, interlocutory, or merely advisory.

42. To the extent Defendants contend that BDR first must pursue a citizen petition under 21 C.F.R. §§ 10.25 and 10.30, an informal conference, or another internal FDA process, that contention does not defeat review under 5 U.S.C. § 704 and *Darby v. Cisneros*, 509 U.S. 137, 146–54 (1993). FDA's Rejection Notice of BDR's ANDA was immediately operative and the cited procedures do not make it inoperative pending review; nor may a court impose exhaustion beyond what the statute or a lawful agency rule clearly requires. BDR therefore need not pursue duplicative reconsideration before seeking APA review.

43. Any further requirement that a new citizen petition be submitted would also be futile and inadequate. FDA already resolved the same NCE/GAIN question in its June 2025 final grant of Phathom's Citizen Petition on a public record applying GAIN exclusivity to NDA 215151 under the FDA's umbrella policy. In that public opinion, FDA adopted the product-wide GAIN exclusivity for vonoprazan that is at issue here. Ex. 5. Requiring BDR to ask FDA to reconsider an FDA decision that, by regulation in 21 CFR 10.45(d) is already final agency action would be

an empty formality and would not protect BDR from the ongoing loss of timing to reach a resolution.

44. Under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Court must exercise independent judgment in deciding the meaning of the FD&C Act and may not defer to FDA merely because the statute is ambiguous. The D.C. Circuit's recent decision in *Norwich Pharms., Inc. v. Kennedy*, No. 25-5137, 2026 WL 2482815, at *4 (D.C. Cir. Aug. 25, 2026), likewise confirms de novo review of statutory interpretation in Hatch-Waxman APA litigation. The legality of FDA's product-wide NCE/GAIN submission bar and its application to BDR's carved-out label are therefore questions for the Court to decide independently.

45. BDR seeks an order requiring FDA to receive and acknowledge ANDA No. 221413 as of May 3, 2026, the date on which the application was submitted and as of the date which FDA must treat as received under 21 C.F.R. § 314.101(b)(2). FDA should also be required to permit BDR to serve the Paragraph IV notice letter contemplated by 21 C.F.R. § 314.95 without penalizing BDR for the agency-caused delay.

46. To preserve the statutory sequence, the Court should, measure any 30-month stay under 21 U.S.C. § 355(j)(5)(B)(iii) and 21 C.F.R. § 314.107(b)(3) from the hypothetical date on which the 45-day period would have expired had FDA timely received the ANDA and issued the acknowledgment letter—approximately June 17 through July 4, 2026—yielding an approximate stay end between December 17, 2028 and January 4, 2029. In the alternative, the Court should order immediate receipt and expedited review and prohibit FDA from using its unlawful delay to compress BDR's first-filer and commercialization window.

## COUNT I

### APA: FDA's Improper Grant and Application of GAIN Act Exclusivity to Vonoprazan Tablets

47. BDR realleges and incorporates the factual allegations of the preceding paragraphs herein by reference.

48. FDA acted arbitrarily, capriciously, and contrary to law by treating GAIN-extended NCE exclusivity as a product-wide submission bar against BDR's carved-out ANDA, even though the ANDA seeks only non-QIDP acid-related esophagitis indications and omits every *H. pylori* and antibiotic-related use.

49. The GAIN Act ties QIDP designation to a qualifying antibacterial or antifungal drug and a specific use, and Section 505E(d)(1), 21 U.S.C. § 355f(d)(1), provides that the designation applies only with respect to the approved application. FDA cannot extend that use- and application-specific incentive into a categorical ban on an ANDA that seeks approval for different, non-QIDP conditions of use.

50. Section 505(j)(5)(F)(ii), 21 U.S.C. § 355(j)(5)(F)(ii), ordinarily permits an ANDA containing a Paragraph IV certification to be submitted after four years from approval of an NCE and bars approval for five years. Section 505E(a), 21 U.S.C. § 355f(a), extends those periods by five years for an approved QIDP. FDA's regulation at 21 C.F.R. § 314.108 implements the NCE submission bar, while 21 C.F.R. § 314.107 governs the resulting approval and stay consequences. These provisions reflect a use-specific, application-specific intent—not a blanket product-wide extension to all NDAs containing the same active moiety regardless of their individual indicated-approved uses. Neither provision authorizes FDA to disregard a lawful section (viii) carve-out for non-QIDP indications.

51. Vonoprazan is a P-CAB that suppresses gastric acid; it is not an antibiotic or antifungal agent. The QIDP predicate was the antibacterial use of combination products containing vonoprazan and a known antibiotic for *H. pylori* eradication, not the standalone acid-related uses sought in BDR's ANDA.

52. FDA's June 2025 umbrella-policy response and its recent Rejection Notice to BDR treated GAIN as a categorical product-wide submission bar irrespective of the conditions of use sought. That interpretation collapses the distinction between QIDP-specific incentives and the Section 355(j)(2)(A)(viii) carve-out, exceeds FDA's statutory authority, and is arbitrary, capricious, and contrary to law under 5 U.S.C. § 706(2)(A), (C).

53. In addition to FDA's rejection of BDR's ANDA, FDA's June 6, 2025 determination granting Phathom's Citizen Petition and extending NCE*GAIN exclusivity to NDA 215151 through May 3, 2032 is itself a separate, independently reviewable final agency action. Under FDA's own regulations, the Commissioner's final decision on a citizen petition "constitutes final agency action." 21 C.F.R. § 10.45(d). That determination marked the consummation of FDA's decision-making on the exclusivity question, fixed the legal status of NDA 215151 in the Orange Book, and produced immediate legal consequences for every ANDA applicant referencing NDA 215151, including BDR, to whom FDA expressly applied it as the sole basis for rejecting ANDA No. 221413.

## <u>COUNT II</u>

### APA: BDR'S ANDA Was Properly Submitted Under 21 U.S.C. § 355(j), And FDA's Refusal to Receive Was Unlawful

54. BDR realleges and incorporates the factual allegations of the preceding paragraphs herein by reference .

55. BDR submitted ANDA No. 221413 on May 3, 2026, with a Paragraph IV certification and a proposed label omitting all *H. pylori* and antibiotic-related indications in conformity with 21 U.S.C. § 355(j)(2)(A)(viii).

56. FDA's Rejection Notice did not identify a missing scientific, technical, or completeness item in the ANDA. It rejected the submission solely because FDA applied a product-wide NCE/GAIN bar to the reference product, even though the ANDA sought approval only for non-QIDP acid-related indications.

57. Under 21 C.F.R. § 314.101(b), receipt of an ANDA is a threshold determination that the application is substantially complete, and an ANDA substantially complete as of submission is treated as received on the date of submission. Despite submission of a substantially complete ANDA, FDA's refusal to consider BDR's application therefore deprived BDR of the statutory receipt date and of the regulatory consequences that follow from receipt.

58. FDA's refusal to receive the ANDA because of a product-wide GAIN submission bar disregarded the lawful carve-out framework and was not in accordance with law, arbitrary and capricious, and in excess of statutory authority. *See* 21 C.F.R. §§ 314.94(a)(8)(iv), 314.101, 314.108.

59. FDA's action inflicted immediate legal consequences by preventing issuance of the Paragraph IV acknowledgment letter and thereby preventing BDR from serving the valid notice required by 21 C.F.R. § 314.95. Without receipt, BDR cannot trigger the 45-day patent-suit period and the related 30-month stay cannot begin under 21 U.S.C. § 355(j)(5)(B)(iii) and 21 C.F.R. § 314.107, and cannot protect its first-applicant position and associated leverage under 21 U.S.C. § 355(j)(5)(B)(iv). Since the relevant patent expires on August 11, 2030, BDR can almost certainly

not obtain a final court decision on patent infringement or patent invalidity before patent expiry and thus its commercialization window is essentially foreclosed during the patent term.

**BDR is Permitted to Carve-Out the QIDP Indications**

60. Section 505(j)(2)(A)(viii), 21 U.S.C. § 355(j)(2)(A)(viii), permits an ANDA to omit protected conditions of use from its labeling, and 21 C.F.R. § 314.94(a)(8)(iv) expressly permits omission of an indication or other aspect of labeling protected by patent or exclusivity. FDA's regulations thus contemplate approval for remaining, non-protected conditions of use when the proposed labeling preserves safety and effectiveness.

61. The D.C. Circuit and Supreme Court have recognized the importance of the carve-out mechanism, including *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 580 (2026). *Hikma* confirms that a generic applicant may seek approval for non-protected uses without reproducing every protected use on the reference product's label.

62. BDR's ANDA seeks approval only for non-QIDP, acid-related indications and omits all *H. pylori* and antibiotic-related indications. Any GAIN-related protection tied to infectious-disease uses therefore cannot, without further statutory justification, bar the properly carved-out ANDA at the submission stage.

63. FDA's contrary interpretation converts an incentive tied to QIDP development into a product-wide submission bar that extinguishes the section (viii) mechanism for unrelated conditions of use. FDA failed to explain why Congress would permit omission of exclusivity-protected labeling under § 355(j)(2)(A)(viii) yet forbid submission of an ANDA seeking only the remaining nonprotected uses.

64. The proper remedy for FDA's unlawful refusal is an order under the APA requiring FDA to receive and acknowledge BDR's ANDA as of May 3, 2026, issue the Paragraph IV

acknowledgment letter, and permit BDR to serve notice under 21 C.F.R. § 314.95. The Court should also vacate the refusal under 5 U.S.C. § 706(2) and grant mandatory injunctive relief under its equitable powers and 5 U.S.C. § 705 as necessary to preserve BDR's statutory rights pending review.

65. If the Court concludes that the Hatch-Waxman timing consequences should be restored as though FDA had acted lawfully on May 3, 2026, any 30-month stay should be measured from the hypothetical date on which the 45-day period would have expired—approximately June 17 through July 4, 2026 under the strategy timeline—with an approximate end date between December 17, 2028 and January 4, 2029. At minimum, the Court should order immediate receipt and expedited review and prohibit FDA from counting the period of unlawful delay against BDR.

66. Backdating or equivalent timing relief is necessary to prevent FDA's unlawful refusal from compressing BDR's first-filer leverage, delaying the initiation of patent litigation, and reducing the commercial window before the relevant Orange Book patent expirations. The relief would restore, rather than expand, the statutory sequence BDR would have received absent FDA's error.

67. At minimum, the Court should order immediate receipt and acknowledgment, require FDA to accept the ANDA for review, preserve May 3, 2026 as BDR's submission date for all statutory and regulatory purposes, and prohibit FDA from relying on its refusal to disadvantage BDR in any later timing or priority determination.

68. BDR will suffer irreparable harm absent immediate relief. Because FDA refused to receive ANDA No. 221413, BDR cannot obtain the acknowledgment letter required by 21 C.F.R. § 314.95(c)(3), serve valid Paragraph IV notice under 21 C.F.R. § 314.95, commence the 45-day

patent-suit period under 21 U.S.C. § 355(j)(5)(B)(iii), or secure the related 30-month stay under 21 C.F.R. § 314.107(b)(3).

69. The delay also threatens BDR's status as the first applicant and its associated first-filer leverage and 180-day exclusivity under 21 U.S.C. § 355(j)(5)(B)(iv). The lost timing window cannot be restored by later monetary relief because it affects the sequence of patent litigation, the timing of any approval, and BDR's ability to compete before the relevant Orange Book patent dates.

70. FDA's unlawful refusal thus inflicts ongoing regulatory and competitive injury that warrants emergency relief under 5 U.S.C. §§ 704–705 and Fed. R. Civ. P. 65, including an order requiring immediate receipt and acknowledgment and, if necessary, preserving BDR's filing date and related statutory timing as of the date that would have applied absent FDA's unlawful refusal.

## PRAYER FOR RELIEF

WHEREFORE, BDR respectfully requests that the Court enter judgment in its favor and:

A. Declare that FDA's June 6, 2025 citizen-petition ruling applying NCE*GAIN exclusivity to NDA No. 215151 and FDA's Rejection Notice of ANDA 221413 is contrary to law and in excess of statutory authority, and vacate and set it aside;

B. Order FDA, to receive ANDA No. 221413, if it is otherwise substantially complete within the meaning of 21 C.F.R. § 314.101(b)(1) and issue to BDR the paragraph IV acknowledgment letter contemplated by 21 C.F.R. § 314.101(b)(1), so thatBDR to may serve the notice letter required by 21 C.F.R. § 314.95;

C. Order that any 30-month stay be measured from the hypothetical date that would have applied under the NCE-1 filing timeline—approximately June 17 through July 4, 2026—or grant equivalent expedited relief preserving BDR's filing date, first-applicant status, and related statutory timing under 21 U.S.C. §§ 355(j)(5)(B)(iii)–(iv) and 21 C.F.R. § 314.107;

D. Enter declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 and grant such other equitable relief as is just and proper; and

E. Award BDR its reasonable attorneys' fees and costs as permitted by law.

## **REQUEST FOR EXPEDITED AND EMERGENCY RELIEF**

BDR respectfully requests expedited and emergency consideration because FDA's refusal to receive ANDA No. 221413 causes continuing, irreparable harm that cannot be repaired by later monetary relief. Without receipt and a Paragraph IV acknowledgment letter, BDR cannot serve a valid Paragraph IV notice under 21 C.F.R. § 314.95, start the 45-day period under 21 U.S.C. § 355(j)(5)(B)(iii), trigger the related 30-month stay under 21 C.F.R. § 314.107, or preserve the first-applicant leverage and 180-day exclusivity consequences associated with a timely Paragraph IV ANDA under 21 U.S.C. § 355(j)(5)(B)(iv). Delay also compresses the period available for patent litigation and commercialization before the relevant Orange Book patent expirations. This APA record-review case presents predominantly legal issues and is appropriate for early summary judgment resolution under Fed. R. Civ. P. 56. To the extent interim relief is necessary, BDR will proceed under Fed. R. Civ. P. 65 and D.D.C. LCvR 65.1(a)–(b), and will file the required LCvR 65.1 notice certificate. BDR can show likelihood of success, irreparable harm, a favorable balance of equities, and *that relief serves the public interest.* Declaratory relief is authorized under Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201–2202.

OF COUNSEL:

Sailesh K. Patel (motion for admission *pro hac vice* forthcoming)
Kevin Nelson (motion for admission *pro hac vice* forthcoming)
Gabriella Salek (motion for admission *pro hac vice* forthcoming)
ARENTFOX SCHIFF LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
(312) 258-5500
sailesh.patel@afslaw.com
kevin.nelson@afslaw.com
gabriella.salek@afslaw.com

Dated: October 21, 2026

Respectfully submitted,

James H. Hulme (Bar No. 323014)
Wayne Matelski (Bar No. 211607)
ARENTFOX SCHIFF LLP.
1717 K Street, NW
Washington, DC 20006
(202) 857-6000
james.hulme@afslaw.com
wayne.matelski@afslaw.com
*Attorneys for Plaintiff BDR Pharmaceuticals Ltd.*