**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BDR PHARMACEUTICALS INTERNATIONAL PVT. LTD.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FOOD AND DRUG ADMINISTRATION;<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services;<br><br>KYLE A. DIAMANTAS, J.D., in his official capacity as Acting Commissioner of Food and Drugs,<br><br>Defendants,<br><br>PHATHOM PHARMACEUTICALS, INC.,<br><br>Proposed Defendant-Intervenor. | Case No. 1:26-cv-03679-JEB |

**MOTION OF PHATHOM PHARMACEUTICALS, INC. TO INTERVENE AS DEFENDANT**

Proposed Defendant-Intervenor Phathom Pharmaceuticals, Inc. ("Phathom") moves to intervene as a defendant under Federal Rule of Civil Procedure 24 and to permit Phathom to file its Answer or other responsive pleading under Federal Rule of Civil Procedure 24(c) and Local Civil Rule 7(j) by the same deadline as defendants.

Phathom has developed and obtained approval for three drug products, including VOQUEZNA (NDA 215151 and NDA 218710). Plaintiff BDR Pharmaceuticals International Pvt.

Ltd. ("BDR") brings this action for one purpose: to strip VOQUEZNA of the benefit of five years of statutory exclusivity that the Food and Drug Administration ("FDA") acknowledged in June 2025, so that BDR can file—and ultimately market—a generic copy of VOQUEZNA years before Congress allows. Phathom thus seeks to intervene to defend the statutory exclusivity to which it is entitled and that BDR seeks to curtail. As detailed in the accompanying memorandum of law, Phathom possesses the right to intervene as a Defendant under Federal Rule of Civil Procedure 24(a), and, alternatively, should be allowed to intervene permissively under Rule 24(b).

Counsel for Phathom has conferred with counsel for Plaintiff BDR Pharmaceuticals International Pvt. Ltd. and counsel for Defendants United States Food and Drug Administration, United States Department of Health and Human Services, Robert F. Kennedy, Jr., and Kyle A. Diamantas (collectively, "FDA" or "Defendants"), pursuant to Local Civil Rule 7(m). FDA takes no position on Phathom's motion. Counsel for Plaintiff has indicated that it will not be able to provide its client's position on Phathom's motion before the weekend. Phathom is proceeding to file its motion in light of the scheduling hearing the Court set for Monday, October 26, 2026, at 10:00 a.m. via Zoom. Phathom notes, however, that BDR's own documents attached to its motion for preliminary injunction indicate that BDR previously represented to the federal government that Phathom "can intervene as of right or by permission under Federal Rule of Civil Procedure 24" in BDR's contemplated suit. *See* Dkt. 4-10 at 13.

The grounds for Phathom's motion are set forth in its accompanying memorandum of points and authorities.

Respectfully submitted,

Dated: October 23, 2026

*_/s/ Andrew D. Prins_*
Andrew D. Prins (D.C. Bar No. 998490)
Cherish Drain (D.C. Bar No. 1656300)
Dorothy M. Canevari (D.C. Bar No. 90043751)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: andrew.prins@lw.com
cherish.drain@lw.com
dolly.canevari@lw.com

Nicholas L. Schlossman (D.C. Bar No. 1029362)
LATHAM & WATKINS LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
Tel: (737) 910-7300
Fax: (737) 910-7301
Email: nicholas.schlossman@lw.com

*Attorneys for Proposed Defendant-Intervenor Phathom Pharmaceuticals, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BDR PHARMACEUTICALS INTERNATIONAL PVT. LTD.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FOOD AND DRUG ADMINISTRATION;<br><br>UNITED STATES DEPARTMENT OF HEALTH<br>AND HUMAN SERVICES;<br><br>ROBERT F. KENNEDY, JR., in his official capacity<br>as Secretary of Health and Human Services;<br><br>KYLE A. DIAMANTAS, J.D., in his official capacity as Acting Commissioner of Food and Drugs,<br><br>Defendants,<br><br>PHATHOM PHARMACEUTICALS, INC.,<br><br>Proposed Defendant-Intervenor. | Case No. 1:26-cv-03679-JEB |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PHATHOM PHARMACEUTICALS, INC. TO INTERVENE AS DEFENDANT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 4

ARGUMENT ........................................................................................................ 9

I. PHATHOM HAS A RIGHT TO INTERVENE UNDER RULE 24(A) ............................ 9

A. Phathom's Motion Is Timely ........................................................................ 10

B. Phathom Has a Legally Protected Interest ........................................................ 10

C. This Action May Impair Phathom's Interest ...................................................... 11

D. No Existing Party Adequately Represents Phathom's Interest ............................ 12

E. Phathom Has Article III Standing ..................................................................... 13

II. ALTERNATIVELY, PERMISSIVE INTERVENTION IS PROPER UNDER RULE 24(B) ........................................................................................................ 14

III. PHATHOM SHOULD BE PERMITTED TO FILE ITS ANSWER OR RESPONSIVE PLEADING BY THE SAME DEADLINE AS FDA ............................. 15

CONCLUSION ........................................................................................................ 16

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abbott Lab'ys. v. Young*,
920 F.2d 984 (D.C. Cir. 1990) ....................5

*Am. Soybean Ass'n v. EPA*,
No. 1:20-cv-03190, Dkt. 20 (D.D.C. Nov. 13, 2020) ....................15

*Amarin Pharm. Ir., Ltd. v. FDA*,
139 F. Supp. 3d 437 (D.D.C. 2015) ....................9

*Appleton v. FDA*,
310 F. Supp. 2d 194 (D.D.C. 2004) ....................10

*Ass'n of Wash. Bus. v. EPA*,
No. 23-cv-3604 (DLF), 2024 WL 3225937 (D.D.C. June 28, 2024) ....................15

*Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*,
566 U.S. 399 (2012) ....................11

*Cayuga Nation v. Zinke*,
324 F.R.D. 277 (D.D.C. 2018) ....................12

*Competitive Enter. Inst. v. FCC*,
970 F.3d 372 (D.C. Cir. 2020) ....................14

*Cnty. of San Miguel v. MacDonald*,
244 F.R.D. 36 (D.D.C. 2007) ....................14

**Crossroads Grassroots Pol'y Strategies v. FEC*,
788 F.3d 312 (D.C. Cir. 2015) .................... *passim*

*Dimond v. District of Columbia*,
792 F.2d 179 (D.C. Cir. 1986) ....................12, 13

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ....................10, 11, 13, 14

*Inst. S'holder Servs., Inc. v. SEC*,
142 F.4th 757 (D.C. Cir. 2025) ....................10, 13

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
937 F. Supp. 2d 18 (D.D.C. 2013) ....................14

*Kinsella v. BOEM*,
No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022) .....4, 16

*Little Sisters of the Poor Sts. Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) .....13

**Mova Pharm. Corp. v. Shalala*,
140 F.3d 1060 (D.C. Cir. 1998) .....3, 9, 10, 11

*Nat'l Tr. for Historic Pres. v. Semonite*,
No. 1:17-cv-01574-RCL, Dkt. 24 (D.D.C. Sept. 12, 2017) .....16

*NRDC v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) .....12

*Roane v. Leonhart*,
741 F.3d 147 (D.C. Cir. 2014) .....10

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*,
331 F.R.D. 5 (D.D.C. 2019) .....15

*Save Long Beach Island v. U.S. Dep't of Commerce*,
No. 3:23-cv-01886-RK-JBD, Dkt. 18 (D.N.J. May 19, 2023) .....16

*Smoke v. Norton*,
252 F.3d 468 (D.C. Cir. 2001) .....10

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) .....12

*WildEarth Guardians v. Jewell*,
No. CV 16-1724, 2016 WL 11720188 (D.D.C. Nov. 23, 2016) .....13

**STATUTES**

21 U.S.C.
§ 355(a) .....4
§ 355(b) .....4
§ 355(c) .....1, 5, 7
§ 355(d) .....4
§ 355(j) ..... *passim*
§ 355f .....1, 2, 6

35 U.S.C. § 271 .....11

Food and Drug Administration Safety and Innovation Act, Pub. L. No. 112-144
§ 8, 126 Stat. 993 (2012) .....5

## RULES

Fed. R. Civ. P. 24 ........ *passim*

Local Civil Rule 7 ........ 4, 15

## OTHER AUTHORITIES

130 Cong. Rec. S10503-13 (daily ed. Aug. 10, 1984) ........ 5

158 Cong. Rec. S3389 (May 22, 2012) ........ 6

158 Cong. Rec. S4610 (June 26, 2012) ........ 6

# INTRODUCTION

Proposed Defendant-Intervenor Phathom Pharmaceuticals, Inc. ("Phathom") has developed and obtained approval for three drug products, each of which shares a common drug substance containing the active moiety vonoprazan: VOQUEZNA TRIPLE PAK (New Drug Application ("NDA") 215152), VOQUEZNA DUAL PAK (NDA 215153), and VOQUEZNA (NDA 215151 and NDA 218710). Plaintiff BDR Pharmaceuticals International Pvt. Ltd. ("BDR") brings this action for one purpose: to strip VOQUEZNA of the benefit of five years of the 10-year statutory exclusivity that the Food and Drug Administration ("FDA") acknowledged in June 2025 for the new chemical entity vonoprazan, so that BDR can file—and ultimately market—a generic copy of VOQUEZNA many years before Congress allows. Phathom thus seeks to intervene to defend the statutory exclusivity to which it is entitled and that BDR seeks to curtail.

To incentivize manufacturers to develop and market entirely new "active moieties"—the portion of the active ingredient (drug substance) responsible for the drug's activity in the body—Congress enacted so-called New Chemical Entity ("NCE") exclusivity. NCE exclusivity applies when a drug containing a new active moiety is approved for the first time. *See* 21 U.S.C. §§ 355(c)(3)(E)(ii), 355(j)(5)(F)(ii). (This five-year period becomes four years in certain circumstances, if a later generic drug application includes a so-called Paragraph IV certification. 21 U.S.C. § 355(j)(5)(F)(ii)). During that five-year period of NCE exclusivity, a second or subsequent applicant cannot submit to FDA an Abbreviated New Drug Application ("ANDA") that refers to an innovator's application for a drug containing the drug substance that contains the new active moiety. *Id.* The NCE exclusivity provisions have proven successful, and have incentivized the development of numerous new active moieties since their enactment in 1984.

In 2012, Congress enacted the Generating Antibiotic Incentives Now ("GAIN") Act, 21 U.S.C. § 355f, to spur development of products that treat serious infections caused by bacteria or

fungi. The GAIN Act provides that when FDA approves an application for a drug designated as a Qualified Infectious Disease Product ("QIDP"), the five-year period of NCE exclusivity "shall be extended by 5 years." *Id.* § 355f(a). Phathom did exactly what Congress sought to encourage: it developed vonoprazan, a novel potassium-competitive acid blocker that improves the ability of antibiotics to eradicate *Helicobacter pylori* ("*H. pylori*") infection, and obtained QIDP designation and, on May 3, 2022, approval of VOQUEZNA TRIPLE PAK and VOQUEZNA DUAL PAK for the treatment of *H. pylori* infection. The NCE exclusivity, as extended under the GAIN Act, thus runs through May 3, 2032.

On June 6, 2025, FDA recognized, in granting Phathom's citizen petition, that VOQUEZNA is protected by the same extended exclusivity period, expiring May 3, 2032, because the GAIN Act extends the NCE exclusivity period awarded with the VOQUEZNA TRIPLE PAK and VOQUEZNA DUAL PAK approvals. FDA rejected BDR's ANDA No. 221413, which BDR submitted on May 3, 2026, and which references VOQUEZNA.

Alongside this NCE exclusivity, to guard against the early entry of generic drugs that duplicate approved drugs' patented innovations, Congress also enacted a reticulated statutory scheme governing the approval date for generic ANDAs that include "patent certifications" that the generic implicates patents relating to an approved drug. *See id.* § 355(j)(5)(B). Among these timing rules, upon a generic manufacturer's filing of a so-called "Paragraph IV" certification challenging the validity or infringement of a patent associated with the approved drug, the approved drug's manufacturer has 45 days from receipt of notice of the certification by the NDA holder and patent owner to sue for infringement, and if it does so, the ANDA is subject to a 30-month stay, to permit completion of the patent litigation. *Id.* § 355(j)(5)(B)(iii).

BDR now asks this Court to "vacate and set . . . aside" FDA's June 6, 2025 citizen-petition decision and order FDA to receive BDR's ANDA as of May 3, 2026, with any 30-month stay backdated and "measured from the hypothetical date" that would have applied had FDA accepted the ANDA. BDR has simultaneously moved for a preliminary injunction on an expedited basis. And remarkably, BDR contends that Phathom will suffer no cognizable harm from the relief it seeks. That is wrong: BDR's requested relief would strip Phathom of five years of statutory exclusivity, expose Phathom to the increased risk of unauthorized generic competition, risk the possibility of new and/or accelerated patent litigation, and jeopardize the revenue that sustains Phathom's business and ongoing research.

To address these issues fully and defend its interests, Phathom seeks to intervene under Federal Rule of Civil Procedure 24. Phathom's interest is readily apparent: As the holder of the statutory exclusivity that BDR seeks to invalidate, Phathom has a substantial financial interest in preserving that exclusivity and protecting its FDA-approved drug products from premature generic competition. And as the Complaint makes plain, BDR's goal is not merely to overturn FDA's citizen-petition decision, but to accelerate the approval and marketing of a generic competitor to VOQUEZNA. Under these circumstances, Phathom is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a), because (1) BDR's claims clearly implicate Phathom's interests in preserving its statutory exclusivity and protecting VOQUEZNA from unauthorized generic competition; (2) Phathom's motion is timely; and (3) Phathom's interest qualifies as "a legally protected interest" that BDR's suit, if successful, would impair or impede. *See, e.g.*, *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998). Further, the government cannot adequately represent Phathom's interest given the divergence between Phathom's interest (in

protecting its private economic interests in VOQUEZNA) and the government's interest (which encompasses the public interest more generally, not just Phathom's private interest). *See, e.g.*, *Crossroads*, 788 F.3d at 321.

Alternatively, Phathom should be granted permissive intervention under Federal Rule of Civil Procedure 24(b) because its defenses share common questions of law and fact with the FDA's defenses, and its prompt intervention—just two days after the filing of the Complaint and preliminary injunction motion—will result in no delay or prejudice to the existing parties. *See* ECF Nos. 1, 4. Phathom is fully prepared to comply with all deadlines set by the Court.

If the Court allows it to intervene, Phathom respectfully requests that the Court permit it to file its Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Civil Rule 7(j) by the same deadline as FDA. *See Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022) (granting intervention and ordering intervenor to file its Answer or other responsive pleading on same date as federal defendants).

Pursuant to Local Civil Rule 7(m), counsel for Phathom has conferred with counsel for BDR and FDA. Counsel for FDA represented that it takes no position on this motion. Counsel for Plaintiff has indicated that it will not be able to provide its client's position on Phathom's motion before the weekend. Phathom is proceeding to file its motion in light of the scheduling hearing the Court set for Monday, October 26, 2026, at 10:00 a.m. via Zoom. Phathom notes, however, that BDR's own documents attached to its motion for preliminary injunction indicate that BDR previously represented to the federal government that Phathom "can intervene as of right or by permission under Federal Rule of Civil Procedure 24" in BDR's contemplated suit. *See* Dkt. 4-10 at 13. Phathom respectfully submits that its intervention should be granted.

**BACKGROUND**

The Federal Food, Drug, and Cosmetic Act ("FDCA") generally prohibits the sale of a

"new drug" unless it has been proven safe and effective. 21 U.S.C. § 355(a)-(b), (d). To secure approval of a new drug, extensive clinical safety and efficacy trials are generally required—a process that takes many years and is extremely costly. *See id.* § 355(b).

The Hatch-Waxman Amendments to the FDCA created abbreviated pathways for follow-on drugs, including the ANDA pathway for generic drugs, which rely on FDA's prior findings of safety and effectiveness for the drug referenced in the ANDA. *Id.* § 355(j). To use the ANDA pathway, an applicant must show that its drug is the "same as" the brand name drug that is referenced in the ANDA. *Id.*

But, to preserve incentives for innovation, Congress paired the ANDA pathway with periods of exclusivities for drug makers who go through the expensive and onerous process of obtaining approval for a new drug via the NDA pathway. *See Abbott Lab'ys v. Young*, 920 F.2d 984, 986 (D.C. Cir. 1990) (noting that the Hatch-Waxman Amendments included new exclusivity provisions designed to "reward[] a pioneer drug" and thus "encourage innovation in the industry").

Among these exclusivity provisions, Congress amended the FDCA to incentivize manufacturers to develop and market entirely new "active moieties"—generally the molecule or ion responsible for the action of the drug substance—that had not been approved previously. This exclusivity is referred to as NCE exclusivity. *See* 130 Cong. Rec. S10503-13 (daily ed. Aug. 10, 1984) (Senator Hatch explaining that NCE exclusivity "protects products whose development has taken much time and money in FDA testing"). NCE exclusivity bars submission of an ANDA or a 505(b)(2) NDA—which blends elements of an ANDA and a full NDA under 505(b)(1) for modifications to an existing drug such as new dosage forms or strengths—for a five-year period. The goal of NCE exclusivity is to enable the brand name drug to be marketed without competition from those referencing it for the five-year period. *Id.*; 21 U.S.C. §§ 355(c)(3)(E)(ii),

355(j)(5)(F)(ii). (This five-year period prohibiting submission of applications referencing the innovator's application becomes four years in certain circumstances, if a later generic drug application includes a so-called Paragraph IV certification. 21 U.S.C. § 355(j)(5)(F)(ii).)

Congress continued to recognize the value of incentives for manufacturers via new exclusivities. Specifically, in 2012, Congress passed the GAIN Act as part of the Food and Drug Administration Safety and Innovation Act, Pub. L. No. 112-144 § 8, 126 Stat. 993, 1077-82 (2012), to further incentivize manufacturers to develop new drugs to address serious infections caused by bacteria and fungi. *See* 158 Cong. Rec. S3389, S3400 (May 22, 2012) (statement of Senator Alexander that GAIN Act "will provide meaningful market incentives and reduce regulatory burdens" on development of such products).

The GAIN Act provides those incentives by extending the length of NCE exclusivity where an active moiety is not just new, but is also approved as part of a drug that is intended to treat "serious or life-threatening infections" by acting on "bacteria or fungi." 21 U.S.C. § 355f(a). The GAIN Act thus recognized that existing exclusivity periods, including NCE, were insufficient to spur the development of such drugs. *See id.*; *see also* 158 Cong. Rec. S4610, S4625 (June 26, 2012) (Sen. Menendez stating that the GAIN Act is intended to address "unmet needs").

Alongside this exclusivity, to prevent premature entry of generic drugs that tread upon approved-drugs' patented innovations, Congress also enacted a statutory scheme governing the effective approval date for a generic drug application that includes "patent certifications" that the generic drug implicates a branded drug's patents. *See* 21 U.S.C. § 355(j)(5)(B). Among these various timing rules, upon the filing of a so-called "Paragraph IV" certification challenging the validity or infringement of a patent associated with the approved drug, the approved drug's manufacturer has 45 days from receipt of notice of the certification by the NDA holder and patent

owner to sue for infringement, and if it does so, the ANDA is generally subject to a 30 month stay, to permit completion of the patent litigation. *Id.* § 355(j)(5)(B)(iii).

Phathom's VOQUEZNA, with the active moiety vonoprazan, is indicated (approved) by FDA both (i) in combination with amoxicillin and clarithromycin for the treatment of *H. pylori* infection in adults, and (ii) in combination with amoxicillin for the treatment of *H. pylori* infection in adults. *H. pylori* is a type of bacteria that can cause inflammation of the stomach lining and ulcers. *H. pylori* is also believed to cause the overwhelming majority of stomach cancers. The active moiety vonoprazan is a novel acid blocker that changes the pH in stomach acid to make it less acidic. The benefit of vonoprazan, with respect to *H. pylori*, is that reducing stomach acid promotes the effectiveness of antibiotics to treat *H. pylori*, such as amoxicillin and clarithromycin.

Patients have multiple options to utilize VOQUEZNA to treat *H. pylori*. Patients can be prescribed VOQUEZNA alongside a prescription for an antibiotic such as amoxicillin or clarithromycin. This single-pack is known as VOQUEZNA (NDA No. 215151 and NDA No. 218710). Alternatively, prescribers can prescribe VOQUEZNA directly in combination with amoxicillin or with amoxicillin and clarithromycin, in a single package. VOQUEZNA TRIPLE PAK, which consists of co-packaged vonoprazan tablets, amoxicillin capsules, and clarithromycin tablets, and VOQUEZNA DUAL PAK, which consists of co-packaged vonoprazan tablets and amoxicillin capsules, were designated as QIDPs for the treatment of *H. pylori* on May 5, 2021. Vonoprazan was first approved as an active moiety in a drug substance on May 3, 2022, when FDA approved Phathom's NDAs for VOQUEZNA TRIPLE PAK and VOQUEZNA DUAL PAK for the treatment of *H. pylori* infections in adults.

Because vonoprazan had never before been approved as an active moiety, FDA's approval, by statute, granted Phathom NCE exclusivity for five years—until May 3, 2027. 21 U.S.C.

§ 355(c)(3)(E)(ii); *id*. § 355(j)(5)(F)(ii). FDA then recognized in the Orange Book that, under the GAIN Act, that NCE exclusivity period was extended by an additional five years, until May 3, 2032, for a total of 10 years of NCE exclusivity tied to vonoprazan.

Approved on November 1, 2023, VOQUEZNA (single-pack) consists of vonoprazan tablets in 10 mg and 20 mg strengths and was approved for a number of indications including the treatment of *H. pylori* infection in adults when used in combination with amoxicillin and clarithromycin, or in combination with amoxicillin alone, and for healing and maintenance of erosive esophagitis and relief of heartburn associated with erosive esophagitis in adults. Because 10 years of NCE exclusivity was awarded in connection with the approval of VOQUEZNA TRIPLE PAK and VOQUEZNA DUAL PAK due to the inclusion of the newly approved active moiety vonoprazan and by operation of the GAIN Act, and because the NCE exclusivity awarded upon those approvals currently remains in effect (running from their approval dates), the Orange Book listings for VOQUEZNA correctly identify the expiration of the NCE exclusivity period for VOQUEZNA as May 3, 2032.

Notwithstanding that exclusivity, on May 3, 2026, BDR submitted ANDA No. 221413 for vonoprazan fumarate tablets referencing VOQUEZNA (NDA 215151), with a Paragraph IV certification and proposed labeling that omits the *H. pylori* indications. Compl. ¶¶ 1, 10, 30, 32. FDA rejected the ANDA because NDA 215151 is protected by 10 years of NCE exclusivity (as extended by five years by operation of the GAIN Act). *See id.* ¶ 37.

BDR filed this suit on October 21, 2026. It asserts that FDA's June 6, 2025 grant of Phathom's Citizen Petition is "a separate, independently reviewable final agency action" that "fixed the legal status of NDA 215151 in the Orange Book," and it seeks an order vacating that decision and FDA's rejection of its ANDA. *Id.* ¶ 53; *id.*, Prayer for Relief ¶ A. BDR also seeks

an order requiring FDA to receive its ANDA as of May 3, 2026, permit BDR to serve a Paragraph IV notice on Phathom, and backdate any 30-month stay of approval. *Id.*, Prayer for Relief ¶¶ B–C. The same day, BDR moved for a preliminary injunction. ECF No. 4.

Phathom now seeks to intervene to protect its interest in the exclusivity that FDA recognized and that BDR seeks to curtail. For the reasons explained below, Phathom easily meets the standards for intervention as of right and, alternatively, permissive intervention.

## ARGUMENT

Under well-settled precedent, Phathom should be allowed to intervene to defend its significant and legally protected interest in the statutory exclusivity that BDR seeks to strip away. "It is settled in this Circuit that drug manufacturers have an interest" sufficient to permit intervention "at least where the putative intervenors' exclusivity rights will be affected by the outcome of the case." *Amarin Pharm. Ir., Ltd. v. FDA*, 139 F. Supp. 3d 437, 445 (D.D.C. 2015); *see also Mova Pharm. Corp.*, 140 F.3d at 1076 (concluding that putative intervenor's "interest in limiting competition for its product" supported intervention). Phathom satisfies the requirements for both intervention as of right and permissive intervention.

### I. PHATHOM HAS A RIGHT TO INTERVENE UNDER RULE 24(A)

Under Rule 24(a),

> the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). In this Circuit, intervention as of right should be granted where the movant establishes "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." *Crossroads*, 788 F.3d at 320.

Phathom easily satisfies each of those requirements. And, although the D.C. Circuit recently clarified that an intervenor seeking the same relief as a party (here, FDA) need not have Article III standing, *Inst. S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025), Phathom nevertheless has Article III standing. *See infra* Section I.E.

**A. Phathom's Motion Is Timely**

"[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). Timeliness "is 'to be judged in consideration of all the circumstances'" in relation to the timeline for proceedings in the case. *Id.* (quoting *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001)). Here, Phathom is filing this motion just two days after BDR filed its Complaint and moved for a preliminary injunction. There is no risk of prejudice to the existing parties, as the Court has not yet held its scheduling conference set for October 26, 2026, or otherwise established a schedule for BDR's motion. Given these circumstances, Phathom's intervention is timely. Phathom is fully prepared to meet any schedule set by this Court. Courts have permitted intervention by parties that have waited months before seeking to intervene. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (holding that a motion to intervene was timely where it was filed "less than two months after the plaintiffs filed their complaint"); *Mova Pharm. Corp.*, 140 F.3d at 1076 (similar); *Appleton v. FDA*, 310 F. Supp. 2d 194, 197 (D.D.C. 2004) (similar). Phathom's intervention is timely.

**B. Phathom Has a Legally Protected Interest**

A legally protected interest requires only "an interest relating" to the agency decision "which is the subject of the action," *i.e.*, where, as here, "a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads*, 788 F.3d at 317, 320. Under this test, intervention may be permitted even when an

agency decision only benefits the proposed intervenor "indirectly" or "tangentially." *Crossroads*, 788 F. 3d at 318. Phathom readily satisfies this test.

Here, Phathom has more than just an "interest relating" to the challenged decisions: Phathom is the holder of the very statutory exclusivity that BDR seeks to curtail. FDA recognized Phathom's entitlement to ten years of NCE exclusivity, and BDR's lawsuit seeks to overturn that determination and permit the premature filing and potential approval of a generic competitor's ANDA referencing the NDA for VOQUEZNA. Phathom's "benefit[] from agency action" and that benefit's potential "remov[al]" if BDR prevails constitute a legally protected interest under D.C. Circuit precedent. *Crossroads*, 788 F.3d at 317. Indeed, in an analogous case involving the Hatch-Waxman Act, the D.C. Circuit recognized that a brand-name drug manufacturer had a legally protected interest warranting intervention in litigation concerning the statutory restrictions on generic competition. *See Mova Pharm. Corp.*, 140 F.3d at 1074-76 (holding that a brand-name drug manufacturer had a sufficient interest in litigation concerning statutory restrictions on generic competition to warrant intervention as of right under Rule 24(a)).

In addition, BDR's lawsuit seeks this Court's intervention to permit BDR to file with FDA a premature so-called Paragraph IV certification, which is a deemed act of patent infringement, 35 U.S.C. § 271(e)(2)(A); *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 407 (2012), and subjects Phathom to a risk of potentially premature and costly patent litigation.

Moreover, establishing Article III standing itself satisfies the requirement of a legally protected interest for purposes of the intervention inquiry, *see Crossroads*, 788 F.3d at 320, and Phathom has standing under this Circuit's precedent, as set forth below, *see infra* Section I.E.

### C. This Action May Impair Phathom's Interest

To determine whether this action may impair Phathom's interest, the Court looks "to the 'practical consequences' of denying intervention." *Fund for Animals*, 322 F.3d at 735 (quoting

*NRDC v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)). Here, if BDR prevails, Phathom would be stripped of five years of statutory exclusivity, and Phathom would face the threat of premature generic competition. That is the entire thrust of BDR's requested relief, as it seeks to "vacate and set . . . aside" FDA's June 6, 2025 grant of Phathom's Citizen Petition and require FDA to receive BDR's ANDA as of May 3, 2026. Compl., Prayer for Relief. The resulting harm to Phathom would be substantial, threatening the revenue from its vonoprazan products that supports its business and ongoing research, while exposing it to the risk of potential costs and burdens of accelerated patent litigation. That is a sufficient interest to support intervention. *See Crossroads*, 788 F.3d at 317; *Cayuga Nation v. Zinke*, 324 F.R.D. 277, 282 (D.D.C. 2018) ("Simply put, a decision in Plaintiffs' favor in this case would impair Putative Intervenor's interests because Plaintiffs are attacking a decision that was favorable to the Putative Intervenor . . . .").

### D. No Existing Party Adequately Represents Phathom's Interest

The inadequate-representation requirement "is not onerous," and "[t]he applicant need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.").

That low standard is clearly satisfied here because government agencies generally do not adequately represent private parties' interests. Government entities are "charged by law with representing the public interest of its citizens." *Dimond*, 792 F.2d at 192-93 (citation omitted). Private intervenors like Phathom, on the other hand, typically seek "to protect a more narrow and parochial financial interest not shared by the citizens." *Id.* at 193 (citation omitted). Not only *might* a government agency not focus narrowly on that interest when defending a claim, but the

government "would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest." *Id.*; *see also Crossroads*, 788 F.3d at 321 ("[W]e look skeptically on government entities serving as adequate advocates for private parties."); *Fund for Animals*, 322 F.3d at 735-37 ("For just these reasons, we have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors."). In sum, "[i]t is well established in this Circuit that 'governmental entities do not adequately represent the interests of aspiring intervenors' because the government's obligation is to represent the interests of its citizens, whereas an intervenor's interests are often more specific." *WildEarth Guardians v. Jewell*, No. CV 16-1724, 2016 WL 11720188, at *3 (D.D.C. Nov. 23, 2016).

These principles apply fully here. Although FDA (like any government agency) obviously has an interest in its actions being declared lawful and an interest in promoting innovation by drug manufacturers, it does not have the same financial and commercial interest in Phathom's exclusivity, and FDA must balance the incentives for innovation that exclusivity protects against other public-health considerations, including access to generic drugs—considerations BDR itself invokes. *See* Compl. ¶ 28. Moreover, depending on the outcome of this case, these same public interest factors, among others, may lead FDA not to pursue full appellate remedies, which Phathom would exercise in the event it became necessary.

Phathom satisfies the inadequate-representation requirement.

### E. Phathom Has Article III Standing

Under Supreme Court precedent, "intervenors that seek the same relief sought by at least one existing party need not" demonstrate Article III standing. *Inst. S'holder Servs.*, 142 F.4th at 764 n.3 (casting doubt on prior D.C. Circuit cases based on *Little Sisters of the Poor Sts. Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.4 (2020)). Because Phathom seeks a judgment

rejecting BDR's claims, it seeks the "same relief" as FDA and need not demonstrate Article III standing.

Even were Phathom required to demonstrate standing, it easily satisfies the requirements of "injury in fact, causation, and redressability." *Crossroads*, 788 F.3d at 316 (citation omitted). If BDR is successful, then Phathom will be unable to benefit from the exclusivities that Congress granted and FDA has determined apply. Indeed, the entire goal of BDR's lawsuit is to deprive Phathom of the benefits of exclusivity, including financial benefit. "[E]ven a small financial injury is enough" to demonstrate standing. *Competitive Enter. Inst. v. FCC*, 970 F.3d 372, 384 (D.C. Cir. 2020). Phathom easily clears the bar here. *See also Crossroads*, 788 F.3d at 317 ("Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit."); *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 34 (D.D.C. 2013) (recognizing that "interfering with the business operations of" an entity confers standing); *Cnty. of San Miguel v. MacDonald*, 244 F.R.D. 36, 44-46 (D.D.C. 2007) (recognizing that a threat to putative intervenors' "business operations" conferred both standing and showed a legally protected interest); *see also Fund for Animals*, 322 F.3d at 733 (holding that a "threatened loss" in the event of an adverse ruling sufficed to confer standing). Phathom's harms, moreover, are plainly traceable to the relief that BDR seeks—vacatur of FDA's grant of Phathom's Citizen Petition and an order compelling receipt of BDR's ANDA—and would be prevented by a judgment against BDR.

## II. ALTERNATIVELY, PERMISSIVE INTERVENTION IS PROPER UNDER RULE 24(B)

At a minimum, Phathom should be granted permissive intervention. Permissive intervention is proper where the movant "has a claim or defense that shares with the main action a

common question of law or fact" and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3).

Here, Phathom seeks to join FDA's defense and will present arguments that arise from the same facts. *See Ass'n of Wash. Bus. v. EPA*, No. 23-cv-3604 (DLF), 2024 WL 3225937, at *11 (D.D.C. June 28, 2024) (holding that offering defensive arguments and seeking the same relief as a defendant "easily satisf[ies] the liberal 'claim or defense' requirement"); *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 14 (D.D.C. 2019) ("The movants seek to defend the Department's decision . . . . That they share this defense in common with the Department is sufficient under Rule 24(b)(1)(B)."). And as already stated, intervention will not result in delay or prejudice, as the case began two days ago, and Phathom is prepared to meet any deadlines set by the Court. Thus, the Court should allow permissive intervention under Rule 24(b) if it does not allow intervention of right under Rule 24(a).

## III. PHATHOM SHOULD BE PERMITTED TO FILE ITS ANSWER OR RESPONSIVE PLEADING BY THE SAME DEADLINE AS FDA

If the Court permits intervention, Phathom respectfully seeks leave to file its Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Civil Rule 7(j) by the same deadline as FDA. Phathom's motion informs the Court and the parties of the nature and basis for its need to participate in this case, such that the Court may adequately evaluate the issues and grant Phathom intervention without a corresponding pleading. Deferring the deadline for Phathom to file an Answer or other response to align with FDA's deadline will further judicial economy by not prematurely requiring such filings until FDA is also required to file. Courts in this District grant such requests routinely. *See, e.g.*, *Am. Soybean Ass'n v. EPA*, No. 1:20-cv-03190, Dkt. 20 (D.D.C. Nov. 13, 2020) (granting motion to intervene and to defer filing responsive pleading under Rule 24(c) to same date as federal defendant); *Nat'l Tr. for Historic*

*Pres. v. Semonite*, No. 1:17-cv-01574-RCL, Dkt. 24 (D.D.C. Sept. 12, 2017) (granting intervention and allowing intervenor's answer to later be filed on same date as federal defendants' answer); *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022) (granting South Fork Wind intervention and ordering it to file its Answer or other responsive pleading under Rule 24(c) on same date as federal defendants); *see also Save Long Beach Island v. U.S. Dep't of Commerce*, No. 3:23-cv-01886-RK-JBD, Dkt. 18 (D.N.J. May 19, 2023) (granting Ørsted intervention and ordering it to file its Answer or other responsive pleading under Rule 24(c) on same date as federal defendants). Granting this request will not cause any delay in this litigation, as FDA has not yet responded to the Complaint, and Phathom is prepared to meet all deadlines this Court imposes on FDA.

## CONCLUSION

For the foregoing reasons, Phathom's motion to intervene should be granted.

Respectfully submitted,

Dated: October 23, 2026

*/s/ Andrew D. Prins*
Andrew D. Prins (D.C. Bar No. 998490)
Cherish Drain (D.C. Bar No. 1656300)
Dorothy M. Canevari (D.C. Bar No. 90043751)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: andrew.prins@lw.com
cherish.drain@lw.com
dolly.canevari@lw.com

Nicholas L. Schlossman (D.C. Bar No. 1029362)
LATHAM & WATKINS LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
Tel: (737) 910-7300
Fax: (737) 910-7301
Email: nicholas.schlossman@lw.com

*Attorneys for Proposed Defendant-Intervenor*
*Phathom Pharmaceuticals, Inc.*